UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER BOUR,

Defendant.

CAUSE NOS. 2:13-cr-36 DRL-MGG
2:16-cv-538-DRL

AMENDED OPINION AND ORDER[1]

In 2013, Mr. Christopher Bour was charged with possessing and producing child pornography. He pleaded guilty without an agreement to one count of purchasing a child for the production of child pornography, 18 U.S.C. § 2251A(b), three counts of producing child pornography, 18 U.S.C. § 2251(a), and one count of possessing child pornography featuring a minor under age 12, 18 U.S.C. § 2252(a)(4). He was sentenced to terms of life imprisonment, 360 months (on two counts), 180 months, and 120 months—all to run consecutively, for a total of life plus 1020 months.

After unsuccessfully appealing his sentence, Mr. Bour filed this 28 U.S.C. § 2255 petition to vacate or correct his sentence. He later filed two supplements to his petition. The government responded to all three submissions. The case was reassigned to this presiding judge on June 22, 2020. The court now denies his petition.

BACKGROUND

Given the procedural nature of Mr. Bour's requested relief, the court needn't rehash the grisly details of his underlying crimes. *See United States v. Bour*, 804 F.3d 880, 883 (7th Cir. 2015). On February 15, 2013, the government filed a criminal complaint against Mr. Bour charging him with knowingly

---

[1] This amended opinion and order includes a ruling on a certificate of appealability.

receiving child pornography, 18 U.S.C. § 2252(a)(2). He was arrested the same day the complaint was filed.

Mr. Bour was immediately brought before a magistrate judge for his initial appearance. At the hearing, the government was present and so was Mr. Bour, though he was not represented by counsel. The magistrate judge advised him that he was not required to make a statement. He was told he had the right to an attorney at all stages of his case. When asked if he could afford an attorney and whether he needed one, he said he was going to hire his own. The magistrate judge then scheduled Mr. Bour's detention hearing for five days later and asked Mr. Bour if he could procure an attorney by then. Mr. Bour said yes. The government read the charges against him.

No private attorney filed an appearance for Mr. Bour by the time of his scheduled detention hearing. At the hearing, the magistrate judge asked if Mr. Bour needed appointed counsel. He said he did. The court then asked Mr. Bour a series of questions about his financial status and ultimately decided that counsel should be appointed. The detention hearing was rescheduled. The next day, Ashwin Cattamanchi appeared for Mr. Bour. The parties stipulated to Mr. Bour's detention and waived a full hearing on the issue.

On March 6, 2013, the government filed an indictment against Mr. Bour charging him with three counts of producing and possessing child pornography. He was arraigned on the charges while still represented by Mr. Cattamanchi. About two months later, another attorney from the Federal Community Defender's office, Matthew Soliday, appeared for Mr. Bour. That same day Mr. Cattamanchi moved to withdraw, and a day later the court granted his motion.

On June 5, 2013, the government filed a superseding indictment charging Mr. Bour with five counts: one count of purchasing a child for production of child pornography, 18 U.S.C. § 2251A(b), three counts of producing child pornography, 18 U.S.C. § 2251(a), and one count of possessing child pornography featuring minor under age 12, 18 U.S.C. § 2252(a)(4). Natisha Hillard was charged in the

2

same document with two counts of permitting, as a parent, a child to participate in the production of child pornography, 18 U.S.C. § 2251(b), and one count of selling a child as a parent for production of child pornography, 18 U.S.C. § 2251A(a).

On December 30, 2013, the government filed a plea agreement as to Ms. Hillard. She pleaded guilty to the three charges against her. A day later, Mr. Bour filed a notice of his intention to plead guilty to all five charges against him "without a written plea agreement from the government." ECF 47.

On January 30, 2014, the court held Mr. Bour's change of plea hearing at which he pleaded guilty to all counts against him. The court accepted his guilty plea, and he was adjudged guilty on counts 2, 3, 4, 5, and 8 of the superseding indictment. His case was referred to the U.S. Probation Office for preparation of a presentence report.

The presentence report indicated that Mr. Bour's offense level was 52—9 levels above a life sentence recommendation. ECF 59. Sentencing was held on May 15, 2014 before Judge Rudy Lozano. Mr. Bour was sentenced to life imprisonment on count 2; 360 months on each of counts 3 and 4; 180 months on count 5; and 120 months on count 8—all to be served consecutively for a total of life plus 1020 months.

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-567 (7th Cir. 2005). The writ of habeas corpus is secured in Article I, § 9, cl. 2 of the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Historically, criminal defendants subject to a final conviction were entitled to habeas relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the

3

Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272-73 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Such writ, however, is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a petition under 28 U.S.C. § 2255, the court should examine the entire record, the motion, and other files. The court should hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). He must do this through a detailed and specific sworn affidavit, which is a threshold requirement to an evidentiary hearing. *Kafo v. United* States, 467 F.3d 1063, 1067 (7th Cir. 2006). Allegations that are "vague, conclusory, or palpably incredible" rather than detailed and specific are not good enough to entitle a petitioner to an evidentiary hearing. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the motion and records conclusively show that the petitioner is not entitled to relief, the court needn't hold an evidentiary hearing. *See Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). That is the case here.

DISCUSSION

A.    *Mr. Bour Cannot Establish a Violation of His Sixth Amendment Right to the Effective Assistance of Counsel.*

The Sixth Amendment to the United States Constitution guarantees a defendant the right to counsel. That includes the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To show a violation of this right, a defendant must show that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

1.      *The Record Conclusively Shows that His Counsel's Representation Didn't Fall Below an Objective Standard of Reasonableness.*

Mr. Bour argues that his counsel was ineffective by (1) providing erroneous advice to induce him to plead guilty, (2) applying improper pressure on him to plead guilty, (3) not filing pretrial motions, (4) not seeking a plea agreement with the government and failing to negotiate a deal in exchange for information relevant to the investigation, (5) applying improper pressure on him to reject the private attorney that Mr. Bour's brother hired, (6) failing to convey that the sentencing guidelines recommendation would result in a life sentence if Mr. Bour pleaded guilty, (7) failing to research and convey all elements of Mr. Bour's charged crimes, and (8) not effectively arguing for the minimum sentence of 30 years at Mr. Bour's sentencing hearing.

There is a strong presumption that Mr. Bour's counsel, Mr. Cattamanchi and Mr. Soliday, performed effectively. *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). For Mr. Bour to meet his burden of proof, he must establish specific acts or omissions of his counsel that constitute ineffective assistance. *Id.* To find that Mr. Bour's guilty plea was involuntary as a result of ineffective assistance of counsel, his counsel must have given him advice that falls below "prevailing professional norms." *Id.* (citing *Chichakly v. United States*, 926 F.2d 624, 628 (7th Cir. 1991)). The record is entitled to a presumption of verity, and Mr. Bour's statements at his plea colloquy "are presumed to be true." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008); *United States v. Pike*, 211 F.3d 385, 390 (7th Cir. 2000); *see also United States v. Salgado-Campo*, 159 F.3d 322, 325 (7th Cir. 1998) ("When, as here, a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, he faces an uphill battle in persuading the judge that his purported reason . . . is fair and just.") (quotations omitted). "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).

The record, including the transcripts from Mr. Bour's change of plea and sentencing hearings, establishes that he received objectively reasonable representation and pleaded guilty knowingly and voluntarily. Mr. Bour argues that he was improperly induced by his counsel to plead guilty; yet, the court conducted a thorough change of plea hearing at which Mr. Bour was under oath and decided to plead guilty. The court asked him "has anyone, including your own lawyer, any lawyer for the government, any government agent or anyone else made any promise or assurance to you of any kind in an effort to induce or cause you to enter a plea of guilty in this case?" Mr. Bour said, "No." ECF 93 at 7. The court then asked him "[h]as anyone, including your own lawyer, any lawyer for the government, any government agent or anyone else attempted in any way to force you to plead guilty in this case?" He answered, "No." *Id.* at 8.

Mr. Bour now says his plea was improperly induced, though he admits in his affidavit attached to his petition "[m]y plea was made voluntarily as I did make the decision to plead guilty, but [Mr.] Soliday erroneously advised me, which lead to my decision to plead guilty." ECF 127 at 36. A guilty plea will only be considered involuntary if counsel provided advice that falls below prevailing norms. *See Coleman*, 318 F.3d at 758.

Mr. Bour vaguely asserts that his counsel "insisted that [he] could not challenge the evidence against [him] and if [he] admitted guilt the judge would give [him] the minimum of 30 years." ECF 127 at 36. His counsel allegedly told him to "consider it like a game of poker and the Government has all the aces." *Id.* at 38. He was told the government would win at trial and it would just embarrass him. That all said, Mr. Bour says he wanted to proceed to trial, but Mr. Soliday's comments improperly induced him to plead guilty.

Sometimes advice from counsel is not what a client wants to hear. An honest assessment of a client's case is essential for an attorney to advise his client properly. Taking Mr. Bour's allegations as true, Mr. Soliday assessed Mr. Bour's case and examined the evidence to determine that "the

[g]overnment has all the aces." He couldn't have known that if he didn't examine the evidence. Mr. Bour even admits that "the [g]overnment's evidence against [him] seemed overwhelming[.]" ECF 134-1 at 4. In Mr. Soliday's professional opinion, he may have thought proceeding to trial was not in his client's best interests, so he presented Mr. Bour with the harsh truth: the evidence against him was overwhelming. If he was to proceed to trial, Mr. Soliday told Mr. Bour to think about what he would say to make him look good—advice that any attorney would give a client stacked up against overwhelming evidence. Vague assertions that Mr. Soliday induced him to plead guilty by advising him of the serious risks of proceeding to trial are not good enough to vacate an otherwise thorough plea colloquy.

The record shows that Mr. Bour pleaded guilty fully informed and satisfied with his counsel's performance. He said he fully discussed the charges against him with his attorney. ECF 93 at 6 ("Q: . . . have you fully discussed those charges and the case in general with your attorney? A: Yes."). At the time he pleaded guilty, he was fully satisfied with his counsel: "Are you fully satisfied with the counsel, representation and advice given to you in this case by Mr. Soliday as your attorney?" He answered, "Yes." *Id.* at 7. His vague and conclusory assertions that Mr. Soliday "used inappropriate pressure to talk him out" of going to trial are insufficient to show ineffective assistance of counsel and are flat-out contradicted by Mr. Bour's sworn testimony to the court.

Mr. Bour also says Mr. Soliday should have filed pretrial motions but provides no further details. He doesn't identify any particular type of motion nor does he suggest that evidence against him was obtained illegally. Instead, his plea colloquy confirmed that he was satisfied with his counsel's representation.

Mr. Bour next claims his counsel failed to seek a plea agreement with the United States Attorney of the Northern District of Indiana and the Executive United States Attorney in Washington, D.C. But no defendant is entitled to a plea agreement from the government. "[T]he successful

negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client . . . as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000); *see also United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) ("Prosecutors need not offer discounts and may withdraw their offers on whim. Defendants have no substantive right to bargain-basement sentences.").

Mr. Bour admitted at his plea hearing that the government made no offers for a plea agreement. The court asked him "[a]nd the government made no offer for a plea agreement; is that correct?" Mr. Bour said, "No, correct." ECF 93 at 7. Mr. Bour fully understood he was pleading guilty "in the blind," without a plea agreement. The court confirmed with Mr. Bour that "there [are] no promises of any kind from the government or the Court in this case; is that correct?" He answered, "Yes." *Id.* at 5.

Mr. Soliday had no control over whether the government offered Mr. Bour a plea agreement. Even still, Mr. Bour admits Mr. Soliday requested a plea agreement from Assistant United States Attorney Jill Koster. ECF 127 at 37. It was rejected. The government confirms a plea agreement was never on the table because it would have been meaningless given that a low-end of the guideline range recommendation would still have resulted in a life sentence. ECF 131 at 16. "Per the United States Attorney himself, the government did not offer Defendant any plea agreement." *Id.* There is nothing that could have been said or done by Mr. Bour's counsel to secure a plea agreement for Mr. Bour, so his conduct could not have fallen below an objectively reasonable standard. To that point, Mr. Bour offers no suggestions on what Mr. Soliday could have done in the alternative to secure a plea agreement, especially when his offense level was nine levels above a life sentence recommendation.

Mr. Bour also argues that his original attorney, Mr. Cattamanchi, should have secured a deal with the government in exchange for giving them the name and address of the female in the illicit videos. ECF 127 at 41. He doesn't propose what Mr. Cattamanchi should've done. And just because

Mr. Bour wanted something in exchange for the information doesn't mean his attorney's conduct fell below an objective standard of reasonableness. The government also explains that Mr. Bour actually lied to law enforcement when proffering information on the offense. ECF 94 at 21; ECF 131 at 16. As such, the government had good reason not to offer a deal. With that in mind, Mr. Cattamanchi advised his client of the next best route to secure a more lenient sentence given the circumstances: cooperate. Though it seemingly had no affect on the court's ultimate sentence, it is perfectly within reason for an attorney to advise his client to cooperate and hope for a more lenient sentence. At least that way Mr. Bour would be credited for acceptance of responsibility, even if it didn't change his effective guideline range.

Next, Mr. Bour says his counsel pressured him out of accepting the assistance of a private attorney. "Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).

Here, Mr. Bour was free to obtain whoever he wanted to represent him, assuming he could afford it. At his initial appearance, he told the magistrate judge he would hire a private attorney. When he showed up to the next hearing unrepresented, the court appointed him an attorney. That attorney withdrew after another community defender appeared. Having already gone through the process of one attorney withdrawing, Mr. Bour knew how the process worked. He didn't request a new attorney and decided to remain with Mr. Soliday. He could not afford a private attorney, so the magistrate judge appointed one. At his plea hearing, Mr. Bour confirmed he was satisfied with Mr. Soliday's representation.

Mr. Bour points to a couple specific statements by Mr. Soliday that improperly persuaded him to turn down the assistance of a private attorney. He says that Mr. Soliday was "nicer than he had ever been, but he seemed perturbed that [Mr. Bour] had talked to another attorney about [his] case." ECF 127 at 38. Mr. Soliday allegedly said, "[D]on't you think I am doing a good enough job for you?" *Id.* He then allegedly insisted he could get the government to drop count two, which carried life, and he would get 30 years if he accepted guilt. *Id.* He also said that he could do what the paid attorney could and it would save Mr. Bour's brother a lot of money. ECF 127 at 38. None of these arguments show how Mr. Bour's counsel's conduct was allegedly unreasonable or below prevailing standards. If assumed true, Mr. Bour's counsel may have been overly nice or "perturbed," but he undoubtedly had a right to defend his capabilities. He said he could do all the same things as the private attorney, but he didn't force Mr. Bour to dismiss his brother's attorney or prevent his consideration of other representation. No appearance by another attorney was filed. As the government argues, Mr. Soliday was a federal community defender and had no incentive to persuade Mr. Bour not to take private representation. The record shows that Mr. Bour could have retained another attorney, he knew the process of having an attorney withdraw, he was satisfied with Mr. Soliday's representation, and Mr. Soliday's representation did not fall below prevailing norms.

Next, Mr. Bour says his counsel told him his offense level score but didn't share with him that his guideline range was a life sentence. He argues he was told his guideline score was in the 50s, "but [Mr. Soliday] never explained what that meant." ECF 128 at 5. Mr. Bour cites *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), which reiterates that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Again, the record shows that Mr. Bour's plea was voluntary and that he understood the possible penalties in his case and still chose to plead guilty.

At his plea hearing, the court went through each count and the corresponding statutory minimum and maximum sentence of imprisonment. For count two, the minimum sentence of imprisonment was 30 years and the maximum penalty was life imprisonment. ECF 93 at 11. For counts three through five, the minimum was 15 years and maximum 30 years. *Id.* at 12-14. The court reiterated, "So for Counts Three, Four and Five, you have at least 15 years in prison. You understand that?" He said, "Yes." *Id.* at 14. "And, again, for Count Two, you have at least 30 years in prison. Do you understand that?" And he said "Yes." *Id.* For count 8, the maximum was 20 years. The court concluded "for all of these counts, you're facing up to life imprisonment . . . Do you understand that?" He said, "Yes." *Id.* at 15. The court asked, "Any questions about what you're facing?" He said, "No." *Id.* "Do you understand that if I accept your plea of guilty and the sentence is more severe than you expected, you will still be bound by your plea and will have no right to withdraw it?" He said, "Yes." *Id.* at 19.

Though Mr. Bour now says he never discussed with Mr. Soliday how the guidelines would apply to him, he admitted differently at the plea hearing. The court asked, "Mr. Bour, did you and your attorney talk about how the Sentencing Commission guidelines apply to your case?" He responded, "Yes." *Id.* at 16. After explaining how the guidelines work, the court again asked, "Have you and your attorney talked about how the sentencing guidelines apply to your case?" He answered, "Yes." *Id.* at 17. And after going through some of the factors the court considers in sentencing, the court asked Mr. Bour, "Any questions about the guidelines or how they operate?" He said, "No." *Id.* at 19. His attempt now to say he wasn't properly advised of the possibility of a life sentence isn't supported by the record, and is contradicted by it. He admitted to discussing how the guidelines applied to him with Mr. Soliday and was told at the hearing the potential penalty of life imprisonment. If he had questions or was receiving new information about the possibility of a life sentence, he had the opportunity to speak with his attorney at the hearing or ask the court questions. He didn't.

He also confirmed that no one promised him a specific sentence. "Has anyone, including your own lawyer, any lawyer for the government, any government agent or anyone else made any prediction, prophecy or promise to you as to what your precise sentence will be?" He answered, "No." *Id.* at 20. His contention that he was promised a sentence of 30 years is not supported by his sworn testimony to the court. As indicated by Mr. Bour's answers at the hearing, Mr. Soliday advised him on how the guidelines applied to his case. Mr. Bour confirmed he wouldn't be allowed to withdraw his guilty plea if the court imposes a sentence he didn't expect.

Next, Mr. Bour boldly argues that he perjured himself at his change of plea hearing because Mr. Soliday told him to answer "yes" to all his questions. In answering as such at his plea hearing, he admitted to an essential element of count two requiring the government to prove that he made an offer over the phone. ECF 127 at 40. He says he never made any offer over the phone or by text with his co-defendant and would have gone to trial on that count but for Mr. Soliday's representation.

Again, the record tells a different story. *See Peterson,* 414 F.3d at 827 ("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand"). At his plea hearing, the government described the facts it intended to prove at trial. The court warned Mr. Bour to listen closely as it would ask him to confirm the accuracy of these facts. The government stated: "Hillard would testify that she communicated with Bour about getting together via cellular telephone, either through phone calls or texts. This testimony would be corroborated by the introduction of cellular telephone records for both Hillard and Bour which showed them exchanging hundreds of text messages and phone calls during the relevant time period . . . . The evidence would show that the offer to exchange custody or otherwise for the defendant to obtain control of Jane Doe was communicated or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, those being cellular telephones that the two used to text one another back and forth." ECF 93 at 40, 44.

Mr. Bour confirmed he "listen[ed] and [paid] close attention to the government's summary of facts constituting the crimes charged for each of the counts[.]" *Id.* at 45. The court asked him, "Do you agree with the government's summary of facts constituting the crimes charged?" He said "Yes." *Id.* at 45-46. "Any part of it you disagree with?" He said, "No." *Id.* The court then confirmed that "you [d]id do all of this knowingly and voluntarily?" He responded "Yes." *Id.* at 25-26. The court can presume the truth of Mr. Bour's statements at his change of plea hearing. Likewise, Mr. Bour had the opportunity to object to facts contained in the presentence report regarding this element, but he didn't. He admitted he received a copy of the indictment and discussed the charges with Mr. Soliday. *Id.* at 6. Mr. Bour's allegations regarding Mr. Soliday's advice on the elements of count two are contradicted by the record. Given this testimony, Mr. Bour confirmed that Mr. Soliday's performance didn't fall below an objective standard of reasonableness.

Mr. Bour also says Mr. Soliday ineffectively argued Mr. Bour's case at his sentencing hearing. He allegedly admitted aggravating factors, acted as a mere spectator, failed to call Dr. Fred S. Berlin as an expert, and didn't argue a downward departure based on a policy disagreement. An attorney isn't required to advance every suggested argument by a client. "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies [caselaw]." *Jones v. Barnes*, 463 U.S. 745, 754 (1983). An attorney "need not advance every argument, regardless of merit[.]" *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

Mr. Bour says Dr. Berlin "could have provided testimony and evidence to support a minimum sentence" but provides no details as to what that testimony would be. ECF 128 at 11. Mere speculation as to what a specialist might testify to is not good enough to show the attorney acted unreasonably in not retaining him. Mr. Bour also doesn't explain whether Dr. Berlin was willing to testify, how much he cost, or any details about the actual possibility of retaining him. The court will not second-guess

13

Mr. Soliday's decision to not retain Dr. Berlin based on mere speculation that he could and would testify on Mr. Bour's behalf.

Mr. Bour then says Mr. Soliday should have advanced an argument that the victim was too young to be harmed or damaged, along with a policy disagreement with child pornography sentences under the guidelines. "Presenting this disagreement with the child pornography guidelines in conjunction with Dr. Berlin's testimony, [Mr.] Soliday would have been able to support the requested 30 year sentence." ECF 127 at 33.

Contrary to Mr. Bour's arguments, his attorney actually did advance these arguments. Mr. Soliday requested Mr. Bour be sentenced to the mandatory minimum of thirty years, both in his sentencing memorandum to the court and at the sentencing hearing. ECF 63 at 4-5; ECF 94 at 17. The memorandum contained two cites to scholarly articles regarding sexual deviance and memories of children at a young age. ECF 63 at 3-4. At the sentencing hearing, Mr. Soliday argued there were mitigating factors in favor of Mr. Bour, including his lack of criminal history and that he provided the U.S. Attorney's Office information. He spoke of Mr. Bour's addiction to pornography and that he should be given a second chance. He mentioned that his decision to plead guilty without a trial should favor a lower sentence than life. ECF 94 at 16. He reiterated his proposed sentence of 30 years. *Id.*

Mr. Soliday advocated for a sentence of 30 years and defended it through argument and outside authority in his memorandum. Nothing on this record that Mr. Bour points to shows any conduct below prevailing standards for an attorney. The circumstances of the crime by themselves presented a tall hurdle for Mr. Soliday to overcome. Even so, the record conclusively shows that he advanced arguments for Mr. Bour—the very arguments that Mr. Bour now proposes. Just because the tactics were not up to Mr. Bour's par does not mean they fell below an objective standard of reasonable. Accordingly, Mr. Bour cannot show a violation of his Sixth Amendment right to the effective assistance of counsel.

14

2.     *Mr. Bour Cannot Establish Prejudice.*

For the prejudice prong, the defendant does not have to show actual innocence or that the outcome more likely than not would have been different, only that there is a reasonable probability that it would have been different. *Benefiel v. Davis*, 357 F.3d 655, 662 (7th Cir. 2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). In the change of plea context, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

*Hill* explained that the second prong to an ineffective assistance of counsel claim focuses on whether counsel's ineffective representation affected the outcome of the plea process. *Id.* That determination often resembles the inquiry for reviewing ineffective assistance challenges to convictions obtained through trial. "[W]hether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of [certain] evidence would have led counsel to change his recommendation as to the plea." *Id.* Thus, where the alleged failure of counsel pertains to a particular defense or trial strategy, the prejudice focuses on whether that defense would have likely succeeded at trial. *Id.*

Here, Mr. Bour argues that the government wouldn't have proven count two at trial, the count he alleges Mr. Soliday never properly researched and conveyed to him the elements. Specifically, he says he did not make an offer over the phone to obtain custody of Jane Doe. Thus, the prejudice in this context depends on whether this defense would have likely succeeded at trial. *See id.*

As an initial note, Mr. Bour voluntarily and knowingly gave up his right to proceed to trial. The court asked him, "Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial, and you will have waived or given up your right to a trial, as well as those other rights associated with a trial as I have just described to you?" He answered,

"Yes." *Id.* at 21. He said his willingness to plead guilty resulted from prior discussions between the government lawyer and him and his attorney. *Id.* at 8.

Mr. Bour pleaded guilty, at least in part because the evidence against him was overwhelming. At his change of plea hearing, he admitted to understanding the elements in count two and conceded the factual basis provided by the government that established those elements. The court explained, "Do you further understand that the essential elements of those offenses; in other words, what the government would have to prove at trial, are: For Count Two, first, that you purchased or obtained custody and control of the person identified in Count Two of the superseding indictment; second, that you knew that the person identified in Count Two of the superseding indictment would be portrayed in a visual depiction assisting another person to engage in sexually explicit conduct; third, that in the course of such conduct, the offer to purchase and obtain custody of the minor was communicated using a means of interstate commerce; and, fourth, that the person identified in Count Two of the superseding indictment at the time of obtaining custody and control was under the age of 18 years." ECF 93 at 22. He responded, "Yes." *Id.*

He also admitted facts that would prove these elements. His attorney asked Mr. Bour "with regard to Count Two, between the dates of November 1, 2011 and February 14, 2013, did you communicate with a Natisha Hillard by way of a telephone to arrange for you to give her money for her daughter to allow you to take pictures or video of her daughter in—well, engaging in sexually explicit conduct?" Mr. Bour answered "Yes." *Id.* at 25.  The government said it would intend to prove these elements through text messages from Mr. Bour and Ms. Hillard, as well as phone conversations and Ms. Hillard's testimony.

Mr. Bour says his answers were lies. Even if the court were inclined to credit such a farfetched claim, he also had the opportunity to object to facts contained in his presentence report that would've established those elements. For example, he didn't object to paragraph 17(j) that stated Mr. Bour

would text Ms. Hillard and ask if he could take Jane Doe to his house to be alone with her. ECF 59 at 12. He also didn't object to paragraph 17(k) that explained that Ms. Hillard would call Mr. Bour asking if he wanted to see Jane Doe because Ms. Hillard needed money. *Id.* at 12. Given Mr. Bour's plea colloquy and the overwhelming facts in the record, he hasn't shown a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. His mere insistence he would have gone to trial despite his likelihood of conviction on this count isn't good enough.

He also says Mr. Soliday should have filed pretrial motions but doesn't specify what kind. He has not sufficiently alleged prejudice for this claim of ineffective assistance because he doesn't explain how the outcome of any pretrial motion would have changed his decision to plead guilty.

Likewise, even if Mr. Soliday applied improper pressure on Mr. Bour to reject representation from a private attorney, Mr. Bour hasn't shown a reasonable probability that the outcome would have been different. He doesn't allege innocence or that evidence was obtained illegally. As the record shows, he was stacked up against overwhelming evidence and faced a guideline recommendation of life imprisonment. An attorney different from Mr. Soliday would have also been tasked with the same scenario. There's nothing to suggest a new attorney would have advised Mr. Bour to proceed to trial— not when doing so would've been meritless and perpetuated the harm against the victim and others.

That said, Mr. Bour advances other arguments not specifically related to his success at trial (or pretrial strategy) but focused on his lack of knowledge of the consequences of pleading guilty. In *Lee v. United States*, 137 S. Ct. 1958, 1962 (2017), the Supreme Court decided whether a defendant pleading guilty under erroneous advice that he wouldn't be deported could establish prejudice by alleging he would've gone to trial for a shot at not being deported, despite the overwhelming evidence against him. The Court distinguished that case from *Hill*:

> The dissent contends that a defendant must also show that he would have been better off going to trial. That is true when the defendant's decision about going to trial turns

on his prospects of success and those are affected by the attorney's error—for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession . . . . Not all errors, however, are of that sort. Here [the defendant] knew, correctly, that his prospects of acquittal at trial were grim, and his attorney's error had nothing to do with that. The error was instead one that affected [the defendant's] understanding of the consequences of pleading guilty. The Court confronted precisely this kind of error in *Hill* . . . . Rather than asking how a hypothetical trial would have played out absent the error, the Court considered whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial. The Court rejected the defendant's claim because he had "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty."

*Id.* The Court found "unusual circumstances" in *Lee* in that the defendant placed a particular emphasis on deportation. The Court said "[t]here is no question that deportation was the determinative issue in [the defendant's] decision whether to accept the plea deal." *Id.* (quotations omitted). This was evinced by the defendant's plea colloquy. The trial court had warned him that a conviction could result in deportation. When the court then asked him if that affected his decision to plead guilty or not, he answered "Yes." *Id.* at 1968. He continued to plead guilty only after counsel assured him that the judge's statement was a standard warning. The Court found "no reason to doubt the paramount importance [the defendant] placed on avoiding deportation." *Id.* at 1969.

Here, there are no unusual circumstances akin to *Lee*. Mr. Bour's plea colloquy dispenses with any concerns that he placed paramount importance on a particular consequence of pleading guilty. He pleaded guilty "in the blind" with no agreement, recommendation, or promise by the government. But now, Mr. Bour alleges he wasn't properly informed of the consequences of pleading guilty.

The only specific allegation of prejudice he puts forth is that he wouldn't have pleaded guilty if he was advised of the possibility of a life sentence (instead of the 30-year sentence he says Mr. Soliday promised him). This would be important information to consider before pleading guilty. That's why the court confirmed he knew the potential penalty of a life sentence before proceeding with his plea.

A defendant doesn't get two bites at the apple. The first time around, Mr. Bour pleaded guilty fully advised of the consequences, as evinced by the plea colloquy. After receiving a sentence he didn't expect—life imprisonment plus 1020 months—he now says he would've "rolled the dice" and tried for acquittal. He has not shown, however, that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

According to Mr. Bour, he "had no chance of receiving a sentence of less than life, so under the circumstances [he] had no reason to plead guilty and not challenge the strength of the Government's evidence at trial. [His] personal choice to roll the dice is enough to satisfy the 'reasonable probability' standard." ECF 134-1 at 23. Were this true, none of Mr. Bour's proposed sentencing tactics, like retaining Dr. Berlin, would have affected his sentence and thus he experienced no prejudice. But as he acknowledges later, there could be at least one tactic for choosing to plead guilty: "pleading will shield a client from the harshest penalty." ECF 128 at 6. Indeed, where a defendant faces life imprisonment with no agreement from the government and overwhelming evidence against him, the wisest decision may be to plead guilty. In that case, the defendant not only shows the court he is accepting responsibility, but he also saves the victim from further trauma and public embarrassment. He saves the court and the government from expending resources on a trial. Mr. Soliday argued as such at Mr. Bour's sentencing hearing. Surely, a court would take these circumstances into consideration when imposing a sentence. But that's not to say it will ultimately result in a favorable sentence to the defendant.

Mr. Bour's decision to plead guilty was not hinged on a promise or belief that he was going to receive a sentence of 30 years. *See* ECF 93 at 7 (Mr. Bour admitting no one made any promises or assurances to induce him to plead guilty); *see also* ECF 93 at 20 (Mr. Bour admitting no one made any prediction or promise as to what his precise sentence will be). His after-the-fact regret to not "roll the

dice" and go to trial is not enough to show a reasonable probability he would've went to trial had it not been for Mr. Soliday's alleged errors.

Finally, as the government argues and as the record shows, Mr. Bour was not going to receive a plea agreement under any circumstance. His offense level was nine levels above a life imprisonment recommendation. Any agreement to reduce that would have been meaningless, unless the government would've been open to more than a nine-level reduction, which it clearly refutes. His insistence that his attorney could've secured him a deal is misplaced. An attorney can do his best, but he can't do the impossible. Mr. Bour hasn't shown that if he received effective counsel he might have secured a beneficial plea agreement. As such, he experienced no prejudice.

B.     *Mr. Bour Wasn't Denied Counsel at a Critical Stage of the Proceedings Against Him.*

The Sixth Amendment provides a defendant the right to have counsel assist him in criminal proceedings. The right attaches at a defendant's initial appearance. "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 213 (2008). Attachment refers to the moment formal judicial proceedings have begun, which is distinct from a critical stage. A critical stage is a postattachment proceeding where counsel must be present unless the defendant waives his right. *Id.* at 211. *Rothgery* determined that Texas's article 15.17 hearing—similar to an initial appearance in the federal context—plainly signals attachment, though it is not itself a critical stage. *Id.* at 195, 212.

Here, Mr. Bour argues that he was not provided counsel at his initial appearance and that "[c]ounsel's absence at this critical stage of the criminal prosecution is per se constitutional error." ECF 127 at 35. An initial appearance may start the adversarial proceedings against a defendant, but it is not a critical stage requiring counsel to be present with defendant. *Rothgery* made this clear. *Id.* at

212; *see also United States v. Todd*, 424 F.3d 525, 530 (7th Cir. 2005) (explaining when a proceeding is a critical stage).

At Mr. Bour's initial appearance, the government appeared by Assistant United States Attorney Jill Koster. Mr. Bour appeared without an attorney. The magistrate judge explained that the purpose of the proceeding was to inform Mr. Bour of the charges against him, determine the need for counsel, and to set bail and conditions of release. He was advised he had the right to an attorney and not to make a statement. He was told he had the right to be represented by an attorney even at the initial appearance. He was asked if he needed a court-appointed attorney but said he would retain his own. The government read the charges against him. The magistrate judge didn't rule on the subject of detention but instead rescheduled a hearing on the subject for a couple days later so that Mr. Bour could hire an attorney in the meantime. At that scheduled detention hearing, Mr. Bour appeared again without an attorney and this time requested a court-appointed counsel. ECF 6. The court agreed, appointed him counsel and rescheduled the detention hearing for two days later. Mr. Bour then stipulated to probable cause and detention and waived a full hearing on the issue. ECF 8.

Mr. Bour wasn't confronted in any way at his initial appearance. He didn't enter a plea or have the opportunity to argue for release. He was simply advised of the charges against him, and the court asked him whether he would need a court-appointed counsel. Thus, under established precedent, Mr. Bour's Sixth Amendment right to counsel was not violated as the initial appearance was not a critical stage.

C.     *Mr. Bour Waived Argument that 18 U.S.C. § 2251(a) is Unconstitutional and That His Indictment Was Defective.*

Without any explanation, Mr. Bour filed two supplemental motions purportedly under Fed. R. Civ. P. 15(d) three years after the filing of his motion to vacate under 28 U.S.C. § 2255. *See* ECF 127, 138, 141. Because all petitions under 28 U.S.C. § 2255 are subject to a one-year statute of

limitations, the court finds that Mr. Bour waived his arguments included in these supplemental motions. 28 U.S.C. § 2255(f).

Mr. Bour cites Fed. R. Civ. P. 15(d): "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." But Mr. Bour's two supplemental motions include two new constitutional challenges to his conviction, not "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." There's nothing to suggest that he couldn't have brought those arguments when he first filed his § 2255 petition, save for the government's argument that they were procedurally barred.

Mr. Bour's supplements don't relate back to the filing of his original petition. "An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The purpose of the one-year statute of limitations is to secure the finality of criminal convictions. *See Rhines v. Weber*, 544 U.S. 269, 276 (2005).

To be sure, even Mr. Bour's arguments about a defective indictment (due to lack of a jurisdictional hook) and constitutional challenge to 18 U.S.C. § 2251 are waived, notwithstanding the statute of limitations for habeas petitions. A defective indictment does not deprive a court of its jurisdiction, *see United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020), so failure to raise such a challenge constitutes waiver. As such, Mr. Bour waived his argument that his indictment was defective.

As to the constitutionality of 18 U.S.C. § 2251(a), Mr. Bour procedurally defaulted this argument by not raising it on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (allowing procedurally defaulted claims only when defendant shows cause, prejudice, or innocence). He makes

no argument why he didn't raise the constitutional argument on direct appeal. Accordingly, his supplemental arguments are barred.

       D.     *Certificate of Appealability.*

Under Section 2255 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). When a petition is dismissed on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a petition is dismissed on the merits, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Here, there is no basis for finding that reasonable jurists would debate the court's rulings on Mr. Bour's § 2255 petition. Furthermore, in his request for a certificate of appealability, Mr. Bour doesn't advance any arguments to the contrary; he simply says he "believes this order raises appealable issues" (ECF 149). Mr. Bour hasn't made the required showing, so the court denies him a certificate of appealability.

CONCLUSION

Petitions under 28 U.S.C. § 2255 are meant for extraordinary circumstances, when a defendant's imprisonment stems from a constitutional violation, not a last-ditch effort to avoid imprisonment on underlying crimes. Mr. Bour's sentence of imprisonment wasn't the result of any constitutional violation. Accordingly, the court DENIES Mr. Bour's motion to vacate his sentence (Crim. ECF 127) and GRANTS his motion for leave to file excess pages (Crim. ECF 134), as the court has considered his excess pages in ruling on his motion to vacate. The court DENIES his request for a certificate of appealability (ECF 149). This order terminates the civil case (Cause No. 2:16-cv-538-DRL).

SO ORDERED.

December 15, 2020                            *s/ Damon R. Leichty*
                                            Judge, United States District Court